IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDOLFO MARROQUIN <br> 8215 14th Ave. Apt# 201 <br> Hyattsville, MD 20783 <br><br> JUAN JOSE GUILLEN MORALES <br> 1215 Randolph Street NW, Apt# 5 <br> Washington, DC 20011 <br>    Plaintiffs, <br><br> v. <br><br> COUNTRY CHOICE, LLC, <br>   400 Morse St. NE <br>   Washington, D.C. 20002 <br><br>   Serve: Curt S. Hansen <br>   419 7th Street, NW, Suite 201 <br>   Washington, D.C. 20001 <br><br> MERHAN HAJ-MOMENIAN A/K/A <br> H.MOMENIAN A/K/A/ HAJ H.M. <br>   400 Morse St. NE <br>   Washington, D.C. 20002 <br><br> and <br><br> HOUSHANG MOMENIAN <br>   400 Morse St. NE <br>   Washington, D.C. 20002 <br>    Defendants. | Case No. _____ |

## COMPLAINT

Plaintiffs, Randolfo Marroquin and Juan Jose Guillen Morales ("Plaintiffs"), by and through their undersigned counsel hereby submits this Complaint against Defendants, Country Choice, LLC, Merhan Haj-Momenian, and Houshang Momenian ("Defendants"), for violations of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.*

(hereinafter "FLSA") the Washington, D.C. Wage and Hour Law D.C. Code § 32-1001 *et. seq.* (hereinafter "DCWHL").

## PARTIES AND JURISDICTION

1. Plaintiffs are individuals over twenty-one years of age. Juan Jose Guillen Morales is a resident of the District of Columbia and Randolfo Marroquin is a resident of the State of Maryland.

2. Merhan Haj-Momenian and Houshang Momenian are individuals over twenty-one years of age.

3. Country Choice, LLC ("Country Choice") is a corporation formed under the laws of the District of Columbia with its principal office in the District of Columbia.

4. At all times relevant to this action - April 22, 2010 through the present - Country Choice operated continuously in the District of Columbia and surrounding states acting as a meat wholesaler and grocery store.

5. At all times relevant, Defendants were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA - 29 U.S.C. § 203(s)(l).

6. At all times relevant, Defendants qualified as an "enterprise" within the meaning of the FLSA - 29 U.S.C. § 203(r).

7. At all times relevant, Defendants employed two or employees who handled goods that had previously moved through commerce.

8. At all times relevant, Defendants have had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

9. This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331 - Federal Question.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTS

11. At all times during Plaintiffs' employment period, Merhan Haj-Momenian was the general manager of Country Choice. Upon information and belief, Mr. Haj-Momenian was also the owner of Country Choice.

   a. At all times during the period of Plaintiffs' employment, Merhan Haj-Momenian had the power to hire, fire, suspend, and otherwise discipline Plaintiffs. In fact, Mr. Merhan Haj-Momenian hired and fired both Plaintiffs.

   b. At all times during the period of Plaintiffs' employment, Merhan Haj-Momenian supervised the work duties of Plaintiffs to ensure his work was of sufficient quality.

   c. At all times during the period of Plaintiffs' employment, Merhan Haj-Momenian set and controlled the work schedule of Plaintiffs or had the power to set and control Plaintiffs' work schedule.

   d. At all times during the period of Plaintiffs' employment, Merhan Haj-Momenian set and determined the rate and method of pay of Plaintiffs or had the power to set and determine the rate and method of Plaintiffs' pay.

   e. At all times during the period of Plaintiffs' employment, Merhan Haj-Momenian controlled, and was in charge of, the day-to-day operations of Country Choice.

12. At all times during Plaintiffs' employment period, Houshang Momenian was the co-manager of Country Choice.

   a. At all times during the period of Plaintiffs' employment, Houshang Momenian had the power to hire, fire, suspend, and otherwise discipline Plaintiffs.

   b. At all times during the period of Plaintiffs' employment, Houshang Momenian supervised the work duties of Plaintiffs to ensure his work was of sufficient quality. Houshang Momenian would directly supervise both Plaintiffs' work.

   c. At all times during the period of Plaintiffs' employment, Houshang Momenian set and controlled the work schedule of Plaintiffs or had the power to set and control Plaintiffs' work schedule. He made sure Plaintiffs arrived on-time and gave them permission to leave at night.

   d. At all times during the period of Plaintiffs' employment, Houshang Momenian set and determined the rate and method of pay of Plaintiffs or had the power to set and determine the rate and method of Plaintiffs' pay.

   e. At all times during the period of Plaintiffs' employment, Houshang Momenian controlled, and was in charge of, the day-to-day operations of Country Choice.

13. Randolfo Marroquin worked for Defendants as a general laborer, butcher, and delivery driver from roughly September 1, 2010 to January 15, 2013.

   a. During all times that Randolfo Marroquin worked for Defendants, Mr. Marroquin worked a set schedule of 58 to 60 hours per week. Mr. Marroquin worked from 7:00am to 5:00pm Monday to Saturday. Mr. Marroquin was occasionally allowed to take a half hour lunch. At all times throughout the course of Mr. Marroquin's employment,

Defendants had knowledge that Mr. Marroquin typically worked about 58-60 hours per week or suffered or permitted Mr. Marroquin to work about 58-60 hours per week.

b. From roughly September 1, 2010 to December 1, 2010, Defendants paid Mr. Marroquin $360.00 per week. From roughly December 1, 2010 to July 1, 2011, Defendants paid Mr. Marroquin $400.00 per week. From roughly July 1, 2011 to June 20, 2012, Defendants paid Mr. Marroquin $450.00 per week. From roughly June 20, 2012 to January 15, 2013, Defendants paid Mr. Marroquin $500.00 per week.

c. Therefore, Defendants paid Mr. Marroquin a salary, irrespective of the number of hours that Mr. Marroquin actually worked. Defendants did not pay Mr. Marroquin time and a half his "regular rate" for the hours he worked over forty. Defendants did not pay Mr. Marroquin the minimum wage prescribed by the Washington D.C. Wage and Hour Law from September 1, 2010 until June 20, 2013. Additionally, Defendants did not pay Mr. Marroquin the minimum wage prescribed by the FLSA from September 1, 2010 until July 1, 2011.

14. Juan Jose Guillen Morales worked for Defendants as a general laborer and butcher from roughly September 12, 2012 to March 20, 2013.

a. During all times that Juan Jose Guillen Morales worked for Defendants, Mr. Guillen Morales worked a set schedule of 58 to 60 hours per week. Mr. Guillen Morales worked from 7:00am to 5:00pm Monday to Saturday. Mr. Guillen Morales was rarely, if ever, allowed to take a full half hour lunch. At all times throughout the course of Mr. Guillen Morales's employment, Defendants had knowledge that Mr. Guillen Morales typically worked about 58-60 hours per week or suffered or permitted Mr. Guillen Morales to work about 58-60 hours per week.

b.  From roughly September 12, 2012 to November 12, 2012, Defendants paid Mr. Guillen Morales $380.00 per week. From roughly November 12, 2012 to March 20, 2013, Defendants paid Mr. Guillen Morales $400.00 per week.

c.  Therefore, Defendants paid Mr. Guillen Morales a salary, irrespective of the number of hours that Mr. Guillen Morales actually worked. Defendants did not pay Mr. Guillen Morales time and a half his "regular rate" for the hours he worked over forty. Additionally, Defendants did not pay Mr. Guillen Morales the minimum wage prescribed by the Washington D.C. Wage and Hour Law and the FLSA at any time during his employment with Defendants.

15. At no time did Plaintiffs perform work that meets the definition of exempt work under the DCWHL or FLSA.

16. Defendants' failure to pay Plaintiffs overtime, as required by the FLSA and the DCWHL, was willful and intentional.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Overtime)

17. Plaintiffs reallege and reassert each and every allegation set forth in the paragraphs above, as if each were set forth herein.

18. Section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees…for a workweek longer than forty (40) hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one-and-one-half (1½) times the regular rate at which he is employed."

19. Plaintiffs was an "employee" covered by the FLSA, 29 U.S.C. § 207(a)(1).

20. Defendants were the "employers" of Plaintiffs under the FLSA, 29 U.S.C. § 207(a)(2).

21. Defendants were obligated to compensate the Plaintiffs at the overtime rate of one-and-one-half (1½) times their regular rate for all hours worked per week in excess of forty (40).

22. As set forth above, while in Defendants' employ, Plaintiffs worked many overtime hours.

23. As set forth above, while in Defendants' employ, Defendants failed and refused to compensate Plaintiffs at the FLSA required overtime rate equal to one-and-one-half (1½) times their regularly hourly rate for overtime hours worked each week.

24. Defendants' failure and refusal to pay Plaintiffs as required by the FLSA was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs under Count I for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

### COUNT II
**Violation of Federal Fair Labor Standards Act**
**(Minimum Wage)**

25. Plaintiffs reallege and reassert each and every allegation set forth herein, as if each were set forth herein.

26. Section 206(a)(1) of the FLSA provides that no employer shall employ any employee at an hourly wage of less than the Federal Minimum Wage, currently $7.25 per hour.

27. At all times, Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 206(a)(1), and Defendants were the "employers" of Plaintiffs.

28. Defendants were obligated to compensate Plaintiffs for all hours worked at an hourly rate not less than the Federal Minimum Wage.

29. As set forth above, Defendants paid Plaintiffs no wages for any hours they worked over forty in each week.

30. Defendants paid Plaintiffs at a rate that fell below the Federal Minimum Wage.

31. Defendants have failed and refused to compensate Plaintiffs properly and as required by the FLSA for numerous hours worked.

32. Defendants failure to pay Plaintiffs wages as required by the FLSA was willful and intentional, and not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs for unpaid minimum wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

### COUNT III
### Violation of Washington, D.C. Wage and Hour Law
### (Overtime)

33. Plaintiffs reallege and incorporate herein the allegations contained in the paragraphs above.

34. At all times relevant to this Complaint, Defendants violated the Overtime Provisions of the District of Columbia Wage and Hour Law by failing to pay Plaintiffs the time and a half for all hours Plaintiffs worked over forty (40) that he worked in a particular workweek.

35. Defendants were, at all times relevant to this complaint, "employers" of Plaintiffs within the meaning of the DCWHL.

36. Plaintiffs worked over 40 hours per week, virtually every week, during the time Plaintiffs worked for Defendants. During this time, Plaintiffs worked, generally worked 58-60 hours per work week.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs under Count III for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

### COUNT IV
### Violation of Washington, D.C. Wage and Hour Law
### (Minimum Wage)

37. Plaintiffs reallege and reassert each and every allegation set forth in the paragraphs above, as if each were set forth herein.

38. Plaintiffs were an "employees" and Defendants were Plaintiffs' "employers" within the meaning of DCWHL.

39. D.C. Code § 32-1003 requires that employers pay their employees at least one dollar over the federal minimum wage. From 2008 until July 23, 2009, the federal minimum wage was $6.55 per hour. Therefore, the D.C. minimum wage during this time was $7.55 per hour. From July 24, 2009 to the present, the federal minimum wage has been $7.25 per hour. Therefore, the D.C. minimum wage has been $8.25 per hour.

40. Defendants failed to pay Plaintiffs at a rate of $8.25 per hour for all hours Mr. Juan Jose Guillen Morales worked and for virtually all hours Mr. Randolfo Marroquin worked.

41. Defendants' failure to pay Plaintiffs for overtime hours worked as required by the DCWHL was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs for unpaid minimum wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

Respectfully submitted,

_____
Michael K. Amster
Bar Number: 1001110
Amster Law Firm, LLC
200-A Monroe Street, Suite 305
Rockville, MD 20850
Telephone: 240-428-1053
Fax: 301-424-8732
mamster@amsterfirm.com